# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Carl N. II,**
**Petitioner Below, Petitioner**

**FILED**

April 25, 2014
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 13-0569** (Berkeley County 10-C-252)

**David Ballard, Warden,**
**Mount Olive Correctional Complex,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Carl N. II[1], by counsel Christopher J. Prezioso, appeals the "Final Order Denying Amended Petition for Habeas Corpus" entered by the Circuit Court of Berkeley County on May 2, 2013. David Ballard, Warden of Mount Olive Correctional Complex, by counsel Christopher C. Quasebarth, responds in support of the circuit court's order.

This Court has considered the parties' briefs and the record on appeal, which includes an appendix and supplemental appendix. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

At trial in March of 2008, the State presented evidence that between October of 2003 and January of 2004, petitioner sexually molested his daughter, A.N., and showed her pornographic materials. The acts were committed when A.N. was twelve to thirteen years old. The State also presented evidence that petitioner showed pornography to his son, S.N., when S.N. was ten to eleven years old. A.N. and S.N. testified to these events at trial. In addition, pursuant to Rule 404(b) of the West Virginia Rules of Evidence, the State presented testimony from petitioner's niece, A.C., and nephew, R.B., who were adults at the time of trial. A.C. and R.B. testified to acts of sexual molestation that petitioner committed against them when they were children.

For his acts against A.N. and S.N., the jury found petitioner guilty of sexual assault in the first degree, West Virginia Code § 61-8B-3; sexual assault in the second degree, West Virginia Code § 61-8B-4; two counts of sexual abuse in the first degree, West Virginia Code § 61-8B-7; two counts of incest, West Virginia Code § 61-8-12; two counts of sexual abuse by a parent, guardian, or custodian, West Virginia Code § 61-8D-5(a); and two counts of display of obscene

---

[1]Consistent with our usual practice, we use initials to protect the identity of victims in sensitive matters. *See* W.Va. R.A.P. 40(e)(1); *State v. Edward Charles L.*, 183 W.Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

1

matter to a minor, West Virginia Code § 61-8A-2. Petitioner was sentenced to prison by order of June 19, 2008. This Court refused his direct petition for appeal on September 24, 2009.

Petitioner filed the instant petition for a writ of post-conviction habeas corpus in 2010. On June 28, 2011, A.N. (who was then 21 years old) signed an affidavit stating that her trial testimony was false and that an uncle sexually molested her, not petitioner. However, two weeks later, on July 14, 2011, A.N. signed a second affidavit recanting the June 28 affidavit and asserting that her trial testimony was true and petitioner was the perpetrator. The July 14 affidavit stated that petitioner and petitioner's mother Marian N., (A.N.'s grandmother), had pressured A.N. into signing the untrue June 28 affidavit. The July 14 affidavit stated that the June 28 affidavit was prepared from a sample provided by petitioner, and that petitioner had suggested she allege that her uncle had abused her.

The circuit court held an omnibus hearing on the habeas petition on January 10, 2013. Petitioner, A.N., Marian N., and petitioner's two trial counsel testified. By order entered May 2, 2013, the circuit court denied the habeas petition on all grounds.

Petitioner now appeals the May 2, 2013, habeas order to this Court. He raises the following assignments of error: (1) insufficient evidence to sustain the conviction; (2) ineffective assistance of trial and appellate counsel; (3) actual innocence and conviction upon false testimony; (4) admission of improper Rule 404(b) evidence; (5) the trial court erred in denying his motion for continuance of trial; and (6) cumulative error. We apply the following standard of review to this appeal:

> In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review.

Syl. Pt. 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006).

Applying this standard of review, and upon a careful consideration of the record on appeal, we find no error in the circuit court's May 2, 2013, order. None of petitioners' assignments of error present constitutional problems warranting habeas relief. We find that the May 2, 2013, order is well-reasoned and supported by the record, and we hereby adopt and incorporate by reference the order's findings of fact and conclusions of law as to the issues raised in this appeal. The Clerk is directed to attach a copy of the May 2, 2013, order to this memorandum decision.[2]

We note that many of petitioner's arguments rest upon his allegation that A.N.'s trial testimony, July 14, 2011, affidavit, and habeas testimony were false. The habeas circuit court heard the evidence, including A.N.'s explanation of how she was coerced into executing a false

---

[2]The copy of the order attached to this memorandum decision is redacted to protect the identity of the victims. *See* footnote 1, *supra.*

2

affidavit. During the habeas hearing, A.N. reaffirmed her trial testimony, and the habeas circuit court found A.N.'s testimony to be credible. For the reasons set forth in the circuit court's order, we find no error in the circuit court's findings regarding the credibility of A.N.'s habeas testimony.

Accordingly, we affirm.

Affirmed.

**ISSUED:** April 25, 2014

**CONCURRED IN BY:**

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

[Redacted]

C Prezioso

IN THE CIRCUIT COURT OF BERKELEY COUNTY, WEST VIRGINIA

STATE ex rel. CARL N̄ ) II,

    Petitioner,

v.
                          Case No.: 10-C-252
                          (Division III)

DAVID BALLARD, Warden,
Mount Olive Correctional Complex,

    Respondent.

## FINAL ORDER DENYING AMENDED PETITION FOR HABEAS CORPUS

On January 10, 2013, came the Petitioner, in person and by counsel, Christopher J. Prezioso, and the Respondent, by counsel, Christopher C. Quasebarth, Chief Deputy Prosecuting Attorney, for an omnibus habeas evidentiary hearing on the Petitioner's Amended Petition for Writ of Habeas Corpus. Upon the evidence then taken, upon the papers and pleadings herein, the argument of counsel, and a review of the underlying criminal case, State v. Carl E. N̄ I, Berkeley County Case No: 07-F-162, the Court denies the Petition for Habeas Corpus.

### FINDINGS OF FACT.

#### A. The Criminal Trial.

1. The Petitioner was indicted for: one (1) felony count of Sexual Assault in the First Degree; one (1) felony count of Sexual Assault in the Second Degree; three (3) felony counts of Sexual Abuse in the First Degree; two (2) felony counts of Incest; two (2) felony counts of Sexual Abuse by Parent, Custodian or Guardian; and one (1) felony count of Distribute or Display Obscene Matter to a Minor, for crimes committed against his own daughter who was then twelve to thirteen years old. The Petitioner was also indicted for one (1) additional felony count of Distribute or Display Obscene Matter to a Minor, for crimes committed against his own son who was then ten to eleven years old. [Indictment, 10/23/07, Counts 1-11; State v. Carl E. N̄ II, Case No.: 07-F-162.]

2. The Petitioner's bail included a term that he have no contact with minors. The

135

Petitioner's bail was revoked less than ninety days after indictment when it was discovered that he was residing with a step-sibling of the two victims. [Order Revoking Bail, 1/8/08.]

3. The State gave notice to the Petitioner of its intent to use **W.V.R.E.** 404(b) evidence. The factual basis for the notice included:

> 3. In addition to the evidence substantiating the indicted counts, the State will introduce evidence that the Defendant sexually assaulted, sexually abused and otherwise imposed his sexual misconduct upon his sister's children, the Defendant's nephew, R    3    , and the Defendant's niece, A    C    when they were minors.

> 4. As early as when Ms. G    was approximately six years old and continuing while she was a minor, the Defendant sexually assaulted, sexually abused and attempted to sexually assault and sexually abuse Ms. C    by putting his fingers in her vagina, attempting to have intercourse with her and attempting to have oral sex with her. These incidents occurred at Ms. C    's parent's house when the Defendant was left to "babysit" she and her brother, at the house of Ms. C    's grandmother (the Defendant's mother, with whom the Defendant lived), and at the house of Ms. C    's grandmother's sister, all of which were in the State of Maryland. The Defendant also displayed pornography to Ms. C    when she was a minor.

> 5. When Mr. B    was approximately eight to ten years old, the Defendant touched him on his penis on numerous occasions and masturbated in front of him. The Defendant displayed pornography to Mr. B    when he was a minor. These incidents of sexual abuse and sexual misconduct generally occurred when Mr. B    was visiting his grandmother (the Defendant's mother, with whom the Defendant lived) at her house in the State of Maryland.

The notice further provided the legal bases for the admissibility of this evidence. [State's Notice of Intent to Use 404(b) Evidence, 11/09/07.]

4. Trial counsel sought psychological records of the victims, and a guardian was appointed for the children to review such records, including mental health records that the Petitioner produced himself regarding the victim A.N. . [Motion for Health

2

Records, 2/19/08; Motion for In Camera Hearing, 3/4/08; Pre-trial Hearing Order, 3/13/08; Medical Records, 3/13/08.] Upon review of the records, the trial court determined that there was nothing in the records submitted to suggest any inconsistency in A A.N.'s telling of what happened and nothing that would affect her competency as a witness. [Second Pre-trial Hearing Order, 3/17/08.]

5. Two weeks before the scheduled trial date, at a scheduled pre-trial McGinnis hearing, Ms. G testified to the allegations made in the 404(b) notice:

> a. She is the Defendant's niece and is currently thirty-two years old. The Defendant is approximately seven years older than she. She has a brother, F B ,
>
> b. When she and her brother were younger, they used to spend time at family gatherings at relatives' homes in Maryland. At other times, the Defendant would sometimes watch she and her brother.
>
> c. She recalls an incident when she was in the first grade at her house in Bladensburg, Maryland, when the Defendant was left with she and F while their mother had gone shopping with the Defendant's mother (A 's and B 's grandmother). The Defendant and A were in F room; the Defendant locked R out; the Defendant had A , remove her pants and tried to penetrate her vagina with his hard penis; the Defendant also had oral sex with her, putting his mouth on her vagina; and the Defendant asked her to perform oral sex on him, which she refused. She was scared. The Defendant told her not to tell or they would get in trouble.
>
> d. She recalls another incident at her grandmother's house in Colmar Manor, Maryland, the same house the grandmother still lives in, when she and P and the Defendant were in the Defendant's bedroom during a family gathering. The Defendant had her pull her pants down. Just then another family member walked in the room so she ducked down and pulled her pants up.
>
> e. A third incident occurred at a family gathering at her grandmother's sister's house in Maryland during a family gathering. The Defendant, she, R and a cousin were in the woods behind the house. The Defendant made her get on the ground and made F get on top of her.
>
> f. Each of these three incidents happened when she was in the first or second grade.

3

g. At a later time, when she was staying the night at her grandmother's house and sleeping on the living room floor, she was awakened by the Defendant touching her thigh. She smacked his hand away. The Defendant was with a friend of his. The Defendant laughed and left.

h. She also recalls being at a cousin's on her father's side, whom the Defendant was then dating. The Defendant was the oldest person present. The Defendant brought a movie and showed it. The movie was of a naked man and a woman having sex with their genitals displayed.

i. She has never spoken with her brother about these things. She told her mother about them when she was in her mid-twenties. She reported these things to the police in Maryland about a year ago.

[Tr. 3/10/08, 3-47.]

6. At that same hearing, Ms. C____'s brother, R____, P____, testified as follows:

a. He is the Defendant's nephew and is thirty-three years old. He has a sister named A____ C____.

b. When young, his family was always over at their grandmother's (the Defendant's mother) because they lived close by. The Defendant sometimes babysat he and A____

c. Since the Defendant was 6-7 years older than R____ looked up to him and followed him around.

d. He does not have much contact with the Defendant now because of allegations of abuse and his own experiences as a child. He remembers when he was 4-5 years old at his grandmother's house where she lived before she moved to where she lives now in Colmar Manor, Maryland, being in a toy chest with the Defendant and the Defendant touching his genitals. He remembers the Defendant putting him on top of the Defendant but does not remember the Defendant penetrating him.

e. He also recalls being in the Defendant's bedroom at the Colmar Manor house. The Defendant was much bigger and would touch R____'s penis. This began when R____ was 8 or 9 and happened a lot; it was always happening. The Defendant would masturbate in front of R____ and ejaculate. This continued until R____ was 12 or 13, just before R____ reached puberty. When R____ was 14 he and his dad remodeled the grandmother's house and it did not happen again after that time.

f. His sister A____ was present for some incidents, but he

4

doesn't recall what.

g. He has never spoken with anyone about these things until speaking with the Prosecuting Attorney.

h. When he was younger, he thought that this behavior was normal, but realized when he was older that it was not and the Defendant should have known better.

i At this same age, the Defendant showed him magazines like Playboy and Hustler, and movies with sexual scenes that were pornography or R-rated.

[Id., 48-88.]

7. The State called no other witnesses. The Petitioner called no witnesses. The parties began to argue the merits of the evidence. The Petitioner then moved for an additional hearing to *"review this for the possibility of presenting witnesses"* to rebut the State's 404(b) evidence. The State opposed the request on the basis that the scheduled pre-trial hearing was the time for the parties to put on their witnesses and the Petitioner did not present witnesses. The trial court denied the motion. [Id., 98-113, 127-132.]

7a. The trial court ordered the admission of the 404(b) evidence, making all of the requisite findings: finding the evidence proved by a preponderance that the Petitioner committed the sexual acts described; that the Petitioner's sexual offenses and sexual misconduct with these family members when they were children was relevant to and probative of the charged acts of sexual offenses and sexual misconduct committed upon his own children; that the evidence was offered for proper purposes under 404(b), as noticed by the State; that the evidence was not too remote, involving a single generation between the Petitioner's niece and nephew and the Petitioner's own children; and that the probative value of the evidence was not substantially outweighed by the prejudicial effect. [Order Admitting 404(b) Evidence, 3/17/08.]

8. The matter proceeded to trial where, amongst other witnesses, Ms. G , Mr. B' , and the two victims of the current charges, each testified. The State notes that Ms. C and Mr. B testified consistently with their pre-trial testimony,

5

and the victims testified as to acts of the Petitioner upon which the charges were based. [Tr., *passim.*]

8a. Mr. B⁻ on cross-examination by the defense as to a family movement against the Petitioner, knew nothing about what counsel was trying to suggest. [Tr. 3/27/08, vol. II, 83-85.]

8b. The defense cross-examined S⁻ ⁻N⁻ as to his living with his aunt and his credence as a witness. [[Tr. 3/27/08, vol. II, 142-149.] The defense later recalled S⁻ to the stand for the same purpose. [Tr. 3/28/08, vol. II, 5-12.]

8c. Evidence of the Petitioner's alcohol problems was placed before the jury. [Tr. 3/27/08, vol. II, 120-121, 129-130, 132-133, 134-140; Tr. 3/28/08, vol. II, 102-104, 113-115.]

8d. The defense called six witnesses, each of whom offered testimony: Deputy Colleen Gibbons, Ashley M⁻ Rachel H⁻ .S⁻ N⁻ ., Dana W⁻ , and Marion N⁻ .. [Tr., *passim.*]

8e. Marian N⁻ the Petitioner's mother, testified that the motive behind the allegations was that the rest of the family were jealous of their brother. [Tr. 3/28/08, vol. II, 39, 110.]

8f. The Court raised the issue of the Petitioner's decision whether to testify on the last full day of evidence, a Friday, covering the dialogue in full on the afternoon of that day. The Petitioner fully acknowledged that his decision whether to testify was his own and that he would not testify. The defense rested. [Tr. 3/28/08, vol. I, 110-112, 144; Tr. 3/28/08, vol. II, 128-132.] At no time on the following Monday when trial resumed, after a full weekend to contemplate his decision, and before the jury was instructed by the Court, did the Petitioner indicate that he had changed his mind and would like to testify. [Tr. 3/31/08, 1-13.]

9. Based on the testimony and evidence, the jury returned guilty verdicts on all

6

counts.[1] [Verdict Form, 3/31/08.]

9a. The Petitioner was sentenced to the statutory sentences as follows: Sexual Assault in the First Degree, as charged in Count One, fifteen-to-thirty-five (15-35) years; Sexual Assault in the Second Degree, as charged in Count Two, ten-to-twenty-five (10-25) years; Sexual Abuse in the First Degree, as charged in Count Three, one-to-five (1-5) years; Sexual Abuse in the First Degree, as charged in Count Four, one-to-five (1-5) years; Incest, as charged in Count Six, five-to-fifteen (5-15) years; Incest, as charged in Count Seven, five-to-fifteen (5-15) years; Sexual Abuse by Parent, Custodian or Guardian , as charged in Count Eight, ten-to-twenty (10-20) years; Sexual Abuse by Parent, Custodian or Guardian , as charged in Count Nine, ten-to-twenty (10-20) years; Display of Obscene Matter to a Minor, as charged in Count Ten, a determinate sentence of five (5) years; and Display of Obscene Matter to a Minor, as charged in Count Eleven, a determinate sentence of five (5) years. The sentences for Counts 1 and 2 run consecutively; the sentences for Counts 3-4 and 6-11 run concurrently with each other but consecutively to the sentences for counts 1 and 2. [Sentencing Order, 6/19/08.]

B. The Direct Appeal Refused.

10. The Petitioner's direct appeal was refused by the West Virginia Supreme Court of Appeals. [Order, 9/24/09.]

C. The Habeas Proceeding.

11. The Petitioner filed a pro se Petition for Writ of Habeas Corpus. [Petition, 3/24/10, SER N      v. Ballard, Case No.: 10-C-252.]

12. With the assistance of counsel, the Petitioner filed a verified amended Petition for Writ of Habeas Corpus. [Petition, 2/3/11.]

13. The Petitioner also filed a verified Losh list. [Checklist of Grounds, 2/3/11.]

---

[1] At the close of the State's case, the State withdrew one count of Sexual Abuse in the First Degree (Count Five of the Indictment) since the victim did not testify as to this event.

7

141

14. The Court directed the Respondent to file a return to the Petition. [Order, 2/18/11.]

15. The Respondent filed its return and supporting memorandum. [Respondent's Return; Respondent's Memorandum, 4/4/11.]

16. The Petitioner filed a *pro se* motion to amend, from which the Court granted the Petitioner's counsel leave to amend the Petition. [Pro se Motion, 5/18/11; Order Setting Deadline, 6/1/11.]

17. After some extensions of time, the Petitioner's Counsel filed a superseding Amended Petition for Writ of Habeas Corpus and new Losh list. [Amended Petition for Writ of Habeas Corpus, 2/29/12.]

18. The Respondent filed its Return and supporting memorandum to the most recent Amended Petition. [Respondent's Return; Respondent's Memorandum, 6/4/12.]

19. The Court held an omnibus habeas evidentiary hearing where it received evidence from witnesses for the Petitioner and the Respondent.

20. The Petitioner acknowledged that he was waiving all possible grounds on his Losh list except for the following: 7-Mental Competency at the Time of the Crime; 8-Mental Competency at the Time of Trial; 9-Incapacity to Stand Trial Due to Drug Use; 17-State's Knowing Use of Perjured Testimony; 21-Ineffective Assistance of Counsel; 24-Excessiveness or Denial of Bail; 33-Refusal of Continuance; 34-Refusal to Subpoena Witnesses; 39-Claim of Incompetence at Time of Offense; 45-Sufficiency of the Evidence; 50-Severer Sentence than Expected; 51-Excessive Sentence; 52-Mistaken Advice of Counsel as to Parole or Probation Eligibility. The Petitioner acknowledged his understanding that he needed to raise all claims and that any not raised would be waived. The Petitioner acknowledged that he was waiving any attorney-client privilege with his trial and appellate counsel.

21. The Petitioner called Marian N       who testified as follows. She is the Petitioner's mother and grandmother to the victims. The victim A        lived with her

8

for several months in 2011. During that time, A̶ brought her an affidavit that she did not witness A̶ write, did not have any conversation with A̶ about writing, and did not coerce A̶ to write. She took A̶ to the bank to get it notarized. To her knowledge, the Petitioner did not instruct A̶ to write the affidavit and she, herself, did not have any conversation with the Petitioner about an affidavit. While testifying at trial, she called each of her four grandchildren that testified to the sexual abuse and sexual misconduct they had suffered at the hands of the Petitioner "liars." The Petitioner admitted to her that he sexually abused two of those grandchildren, the two who were not the named victims in the indictment, and showed pornography to his own son and daughter, which was charged in the indictment. (The Court notes that it later had Marain N̶ removed from the courtroom for misconduct during A N̶ s testimony.)

22. The Petitioner testified as follows. The charges were a conspiracy against him by other family members, though he does not dispute the facts for which he was on trial concerning his son. He believes that he was younger when he committed the acts he was accused of by his niece and nephew [which were the subject of 404(b) testimony at trial]. He was drinking alcohol in 2006, was bi-polar and had post-traumatic stress disorder. He discussed his mental issues and alcohol use with his attorneys but did not get an evaluation. He did not get an evaluation for this habeas proceeding nor did he provide any documentation to support his assertions regarding his mental health. He did not believe that his trial counsel was prepared for trial because 3-4 weeks before trial one of his attorneys said that he was not then ready for trial. He agrees that his attorneys examined witnesses at the 404(b) hearing and at trial, called trial witnesses, prepared instructions, and made objections and arguments. He thought the facts were not investigated by his lawyers but did not identify any facts except his assertion that there was a family conspiracy against him. He thought witnesses were not subpoenaed by his lawyers that should have been, but did not identify such witnesses or, if named,

9

143

could not identify what helpful testimony they would have offered. He met his lawyers several times in court, at their offices, and in the jail. He thought his trial would be continued. His lawyers moved to continue the trial but the motion was not granted by the trial court. He did not testify at trial. The trial court advised him that whether he testified at trial was his sole decision. His lawyers told him that it would not be wise for him to testify. He felt coerced by them into not testifying. He met with his appellate lawyers several times and they explained what would go into the appeal. He learned in prison what an *Anders* brief is. He drafted an affidavit for A.N. to copy and sign when A.N. arrived at his mother's. [State's Exh. 1.] He agreed that the affidavit he believes A.N. signed is almost word-for-word with the affidavit he drafted. [Plaintiff's Exh. 1.] He did not pressure A.N. to sign an affidavit and has no knowledge of his mother pressuring A.N.

23. The Respondent called William Dehaven, who testified that he and Deborah Lawson, both of the Public Defender's Office, were the Petitioner's trial attorneys. He did not review the trial file before testifying but was operating from memory. He met with the Petitioner several times before trial. He may not have been prepared for trial 3-4 weeks before trial but they were prepared for trial. He moved for a continuance of the trial but it was denied. The Petitioner came from a dysfunctional family but there was no evidence found to support the Petitioner's allegation of a family conspiracy.

24. The Respondent called Deborah Lawson, who testified that she and Mr. Dehaven were the Petitioner's trial counsel. She has since retired. Mr. Speaker of her office was the Petitioner's appellate counsel. She did not find any evidence to support a family conspiracy against the Petitioner. She did not believe that putting the Petitioner's sister and her husband, who he accused of the conspiracy, on the stand would assist the Petitioner's case. They advised the Petitioner that whether he testified was his decision but that they did not think it would be a good idea because he was slow and would be cross-examined vigorously by the State. They did not coerce the Petitioner to not testify.

10

She found nothing about the Petitioner's mental health or alcohol abuse that would rise to the level of a defense to the charges he was facing. They prepared as they would for any trial. The court denied the motion to continue. Her office filed an appeal but it was refused. An *Anders* brief is one where appellate issues are identified by a party's attorney but the attorney acknowledges, in his duty to the court, that there is not a reasonable basis in the record to support the allegations. Opening statements are not evidence. The State's reference in opening to the 404(b) evidence was not objectionable because the trial court ruled it admissible. Corporal Hall's testimony about what the Safe Haven Center, where the children were interviewed, is was not objectionable. She cross-examined the victim A̶ but did not want to elicit additional sympathy for her from the jury by being too aggressive. They chose not to publish to the jury the DVDs of A̶ and S̶'s Safe Haven interviews because they would just reiterate the testimony already heard. There was no evidence to support a venue change motion.

25. The Respondent called A̶ N̶ who testified that she is the Petitioner's daughter and the victim of the sexual crimes for which he was convicted. She is an adult now but was a minor at the time of the offenses. She testified truthfully at trial and stands by her trial testimony. She signed an affidavit in 2011 that her trial testimony was truthful. [State's Exh. 2.]

The substantive text of A̶ N̶'s July 14, 2011, Affidavit reads:

> 1. My name is A̶ N̶. My date of birth is June 25, 1991.
>
> 2. My father is Carl E. N̶ II. I testified truthfully at the jury trial that Carl E. N̶ II, my father, sexually assaulted me, sexually abused me, and forced me to watch pornography when I was a child in Berkeley County, West Virginia, in 2003 and 2004. <u>State v. Carl E. N̶ II</u>, Case No.: 07-F-162.
>
> 3. Since the time of Carl E. N̶'s conviction in 2008, I have been under constant pressure from my grandmother, and Carl E. N̶ II to falsely recant my truthful trial testimony.

11

4. My father, Carl E. N⸺ II, recently mailed a sample affidavit to me from prison, requesting that I falsely recant my testimony and allegations. In that sample affidavit, Carl N. II provided a false reason for the recantation, suggesting that I allege that my uncle abused me and also suggested that I could use a different reason. Under pressure from my grandmother, with whom I now reside due to my financial situation, I prepared an affidavit from the sample sent by my father and had my signature notarized on June 28, 2011.

5. I now understand that, despite the pressure I was receiving from my grandmother and Carl E. N II, it was wrong for me to sign an untrue affidavit claiming that the allegations that my father, Carl E. N II, sexually assaulted me were false when they are true.

6. I stand by my trial testimony as being truthful. The conviction of my father, Carl E. N II, was based on my truthful testimony in Case No.: 07-F-162.

Further this affiant saith naught.

[Affidavit of A⸺ N⸺, 7/14/11, State's Exh. 2.] She explained that she signed this truthful affidavit to recant an untrue affidavit, admitted as Plaintiff's Exh. 1, that she was compelled to sign under pressure from her grandmother and the Petitioner a couple of weeks earlier. She explained why she signed the untrue affidavit. In 2011 she lived with her grandmother, Marian N⸺, due to financial problems and a feeling of having failed her aunt and uncle, who had been providing for her. While living with her grandmother, her grandmother called her horrible names and opened all of her mail. She was financially dependent on her grandmother and felt she had nowhere else to go. Her grandmother insisted that she speak with the Petitioner on the telephone and correspond with him, and her grandmother was nicer to A. N. if A. N. did so. Her grandmother knew of this untrue affidavit. She identified a draft of the untrue affidavit that the Petitioner prepared and mailed to her from prison. [State's Exh. 1.] She copied that untrue draft at the insistence of her grandmother, who took her to the bank to get it notarized. She did not understand the import of a notarized affidavit at that time. On cross-examination, she identified an earlier but different untrue affidavit she wrote from

12

the Petitioner's draft, but explained that it was not used because her grandmother and the Petitioner did not like it. [Plaintiff's Exh. 2.] On cross-examination, she also identified letters she wrote to the Petitioner in prison, but explained that those letters were written under pressure from her grandmother. [Plaintiff's Exh. 3.] She tearfully explained that the letters are not sincere because she used terms like "dad" and "daddy" in them but when she testified in this proceeding and at trial she only called the Petitioner "Carl" because he did not earn being called "dad" after what he did to her.

### CONCLUSIONS OF LAW.

### A. General Principles Applicable.

1. A habeas corpus procedure is "civil in character and shall under no circumstances be regarded as criminal proceedings or a criminal case." State ex rel. Harrison v. Coiner, 154 W.Va. 467, 176 S.E.2d 677 (1970); W. Va. Code § 53-4A-1(a).

2. A convicted criminal has the right to one omnibus post-conviction habeas proceeding. The West Virginia Supreme Court of Appeals holds:

> In general, the post-conviction habeas corpus statute...contemplates that every person convicted of a crime shall have a fair trial in the circuit court, an opportunity to apply for an appeal to this Court, and **one omnibus post-conviction hearing** at which he may raise any collateral issues which have not previously been fully and fairly litigated.

Losh v. McKenzie, 166 W.Va. 762, 277 S.E.2d 606, 609 (1981)(emphasis added).

3. "A habeas corpus proceeding is not a substitute for a writ of error in that ordinary trial error not involving constitutional violations will not be reviewed. Syl. Pt. 4, State ex rel. McMannis v. Mohn, 163 W.Va. 129, 254 S.E.2d 805 (1979), cert. den., 464 U.S. 831, 104 S.Ct. 110, 78 L.Ed.2d 112 (1983)." Syl. Pt. 9, State ex rel. Azeez v. Mangum, 195 W. Va. 163, 465 S.E.2d 163 (1995); Syl. Pt., State ex rel. Phillips v. Legursky, 187 W. Va. 607, 420 S.E.2d 743 (1992).

13

4. Moreover, "[t]here is a strong presumption in favor of the regularity of court proceedings and the burden is on the person who alleges irregularity to show affirmatively that such irregularity existed." Syl. Pt. 2, State ex rel. Scott v. Boles, 150 W. Va. 453, 147 S.E.2d 486 (1966); State ex rel. Massey v. Boles, 149 W. Va. 292, 140 S.E.2d 608 (1965); Syl. Pt. 1, State ex rel. Ashworth v. Boles, 148 W. Va. 13, 132 S.E.2d 634 (1963).

5. Due to this strong presumption of regularity, statutory law requires that a petition for writ of habeas corpus ad subjiciendum shall "specifically set forth the contention or contentions and grounds in fact or law in support thereof upon which the petition is based[.]" W. Va. Code § 53-4A-2. The reviewing court shall refuse, by written order, to grant a writ of habeas corpus if the petition, along with the record from the proceeding resulting in the conviction and the record from any proceeding wherein the petitioner sought relief from the conviction show that the petitioner is entitled to no relief or that the contentions have been previously adjudicated or waived. W. Va. Code § 53-4A-3(a), -7(a); State ex rel. Markley v. Coleman, 215 W.Va. 729, 601 S.E.2d 49, 54 (2004); Perdue v. Coiner, 156 W.Va. 467, 469-470, 194 S.E.2d 657, 659 (1979).

6. In order to prevail on an issue previously adjudicated during the criminal proceeding, the petitioner must prove that the trial court's ruling is "clearly wrong". W. Va. Code § 53-4A-1(b).

7. Grounds not raised by a petitioner in his petition are waived. Losh v. McKenzie, 166 W. Va. 762, 277 S.E.2d 606, 612 (1981); see also: State ex rel. Farmer v. Trent, 206 W. Va. 231, 523 S.E.2d 547 (1999), at 550, n. 9. Any ground that a habeas petitioner could have raised on direct appeal, but did not, is presumed waived. Syl. Pts. 1 & 2, Ford v. Coiner, 156 W. Va. 362, 196 S.E.2d 91 (1972).

8. The reviewing court has a mandatory statutory duty to enter an order denying the relief requested in a habeas petition if the record demonstrates that a habeas petitioner is entitled to no relief. That statute reads, in part:

14

> If the petition, affidavits, exhibits, records and other documentary evidence attached thereto, or the return or other pleadings, or the record in the proceedings which resulted in the conviction and sentence, or the record or records in a proceeding or proceedings an a prior petition or petitions filed under the provisions of this article, or the record or records in any other proceeding or proceedings instituted by the petitioner to secure relief from his conviction or sentence, show to the satisfaction of the court that the petitioner is entitled to no relief, or that the contention or contentions and grounds (in fact or law) advanced have been previously and finally adjudicated or waived, the court shall enter an order denying the relief sought.

W. Va. Code § 53-4A-7(a); *see also* W. Va. Code § 53-4A-3(a) and Perdue v. Coiner, 156 W.Va. 467, 469-470, 194 S.E.2d 657, 659 (1979). Furthermore, W. Va. Code § 53-4A-1, *et seq.*, "contemplates the exercise of discretion by the court", authorizing even the denial of a writ without hearing or the appointment of counsel. Perdue v. Coiner, *supra.*

9. The Petitioner knowingly and intelligently waived his attorney-client privilege in court and by making allegations about the representation he received from trial and appellate counsel.

**B. Sufficiency of the Evidence Allegation.**

10. The Petitioner's sole thrust in this allegation is that he presented an affidavit wherein his daughter A     N     recanted the allegations. [Plaintiff's Exh. 1.] For the reasons provided below, the Court finds this affidavit to have been coerced from A N     and is, in fact, untrue.

11. The Court does not find Marian N     s testimony credible based on her demeanor while testifying, and her misconduct in the courtroom during the testimony of her granddaughter, A     N     . Marian N     denied knowing anything about the affidavit admitted by the Petitioner [Plaintiff's Exh. 1] or correspondence to A N     from the Petitioner. Marian N     denied coercing A     to sign the affidavit. The Court gives no credit to any of this testimony.

A.N.'S

12. The Petitioner offered no evidence or proof that A     's allegations and trial

15

149

testimony were fabricated. The Petitioner offered no evidence or proof that there was a "family conspiracy" against him. The Petitioner admitted that he drafted the affidavit for A___ to sign.

13. The testimony of A___ N___ is credible, based on her demeanor and candor. A___ explained that she stood by the truthfulness of her trial testimony. She explained the pressure she received from her grandmother and the Petitioner to sign the untrue affidavit. She explained the financial and family circumstances that led her to live with her grandmother in 2011, three years after the Petitioner's trial. She explained the pressure she received from her grandmother to communicate with the Petitioner and to sign the untrue affidavit. She explained that she copied a draft of that untrue affidavit from one prepared by the Petitioner, which draft was admitted as State's Exh. 1. She explained that her grandmother and the Petitioner did not like her first attempt at copying the draft, which first attempt was admitted as Plaintiff's Exh. 2. She explained that letters, which were admitted as Plaintiff's Exh. 3, that she sent to the Petitioner in prison were all due to pressure from her grandmother. She explained the circumstances of subsequently filing the affidavit that was admitted as State's Exh. 2, where she recanted the earlier affidavit presented by the Petitioner.

14. Based on the foregoing, the Court concludes that A___ recanted the June 28, 2011, affidavit the Petitioner presents as Plaintiff's Exh. 1 as false. A___ N___ stands by her trial testimony as truthful. The Court accepts A___'s testimony and the affidavit admitted as State's Exh. 2 as true.

15. Once the affidavit issue is resolved against the Petitioner, he has nothing left to stand upon. The Petitioner concedes to this Court that he does not dispute the sufficiency of the evidence to support the convictions concerning his son S___ The Petitioner identifies nothing else in the record that demonstrates that the trial court wrongfully denied his motions for acquittal. The Petitioner's only assertions are that the victims fabricated their testimony through coercion or conspiracy of other family

16

members. The Petitioner presented no evidence at trial or in the habeas proceeding to support these allegations.

The standard of review utilized by the Supreme Court when reviewing the denial of a motion for acquittal is:

> "'Upon a motion to direct a verdict for the defendant, the evidence is to be viewed in light most favorable to the prosecution. It is not necessary in appraising its sufficiency that the trial court or reviewing court be convinced beyond a reasonable doubt of the guilt of the defendant; the question is whether there is substantial evidence upon which a jury might justifiably find the defendant guilty beyond a reasonable doubt.' *State v. West*, 153 W. Va. 325 [168 S.E.2d 716] (1969)." Syllabus Point 1, *State v. Fischer*, 158 W. Va. 72, 211 S.E.2d 666 (1974).

Syl. Pt. 3, State v. Taylor, 200 W. Va. 661, 490 S.E.2d 748 (1997).

The standard for reviewing the sufficiency of evidence to support a conviction is:

> A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighted, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled. Syllabus Point 3, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995).

Syl. Pt. 1, State v. Miller, 204 W. Va. 374, 513 S.E.2d 147 (1998); Syl. Pt. 3, State v. Williams, 198 W. Va. 274, 480 S.E.2d 162 (1996); Syl. Pt. 2, State v. Hughes, 197 W. Va. 518, 476 S.E.2d 189 (1996).

The record shows that the Petitioner fails to prove his allegation that the trial court should have granted his motions for acquittal. **W. Va. Code §§ 53-4A-3(a), -7(a)**; Perdue v. Coiner, *supra*. This claim, and unwaived Losh claim 45, are denied.

17

## C. Ineffective Assistance of Counsel Allegation.

16. The Court notes that the Petitioner did not address these allegations in his proposed order, except for a conclusory clause that the Petitioner "did not receive competent and effective representation." That is insufficient for the Petitioner to have proved these allegations. Moreover, the trial record and habeas evidence show that the Petitioner fails to meet either prong of the two-prong standard necessary to prove ineffective assistance claims: 1) counsel's performance was deficient under an objective standard of reasonableness; and 2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. Syl. Pt. 1, State ex rel. Bailey v. Legursky, 200 W. Va. 770, 490 S.E.2d 858 (1997); Syl. Pt. 5, State v. Miller, 194 W. Va. 3, 459 S.E.2d 114 (1995). Mr. DeHaven and Ms. Lawson represented the Petitioner through trial and sentencing. Their office also represented the Petitioner on his direct appeal.

### 1. Case Investigation.

The Petitioner's assertion that counsel failed to investigate his case is denied. The Petitioner was not specific in his pleadings or his testimony. The Petitioner asserts that "the facts of his case were not properly investigated." He does not specify what facts were not investigated or how, if the facts he thinks were not investigated had been, such an investigation would have changed the outcome of his trial. Specificity in habeas pleading is a requirement. **W. Va. Code § 53-4A-2.** "'A mere recitation of any of our enumerated grounds without detailed factual support does not justify the issuance of a writ, the appointment of counsel, and the holding of a hearing.' Losh [v. McKenzie, supra]." SER Markley v. Coleman, supra.

The Petitioner likewise asserts that "no one interviewed the witnesses that should have been interviewed or properly reviewed all discovery in this case." He does not specify what witnesses or what discovery he thinks were not properly interviewed or reviewed or how such interviews and reviews would have changed the outcome of

18

152

his trial. He does not identify character or factual witnesses that would have convinced the jury that he did not commit the crimes of which he was convicted. He does not identify what witnesses would have rebutted the 404(b) evidence offered against him either at the pre-trial hearing or at trial. The Petitioner fails to demonstrate that the Petitioner's trial counsel acted below an objectively reasonable standard in their trial preparation or that, had they, the results of the proceeding would have been different. Bailey, *supra*; Miller, *supra*.

2. At trial.

a. *Trial Counsel's Opening statement.*

Opening statements are not evidence. Whether trial counsel offered the jury motives during opening statements for the Petitioner's children's testimony is immaterial to the jury's verdict.

b. *State's Opening statement.*

Opening statements are not evidence. The Petitioner complains that the State referenced the 404(b) evidence that the jury would hear. The Petitioner admits that the trial court had already ruled the evidence admissible. Ms. Lawson testified that the State's reference to this admissible evidence was not objectionable. This issue is not even subject to review in a habeas corpus proceeding. "A habeas corpus proceeding is not a substitute for a writ of error in that ordinary trial error not involving constitutional violations will not be reviewed. Syl. Pt. 4, State ex rel. McMannis v. Mohn, *supra*, 163 W.Va. 129, 254 S.E.2d 805 (1979), *cert. den.*, 464 U.S. 831, 104 S.Ct. 110, 78 L.Ed.2d 112 (1983)." Syl. Pt. 9, State ex rel. Azeez v. Mangum, *supra*, 195 W. Va. 163, 465 S.E.2d 163 (1995); Syl. Pt., State ex rel. Phillips v. Legursky, *supra*, 187 W. Va. 607, 420 S.E.2d 743 (1992). Prosecutorial remarks alleged improper are not constitutional error. State ex rel. Wimmer v. Trent, 199 W. Va. 644, 487 S.E.2d 302, 306 (1997)(claim of prosecutorial misconduct by allegedly improper remarks does not "implicate the appellant's constitutional rights in such a manner as to be reviewable on habeas

19

corpus"); State v. Guthrie, 194 W. Va. 657, 461 S.E.2d 163, 190 (1997)(citing improper prosecutorial remarks in State v. Hobbs, 178 W. Va. 128, 358 S.E.2d 212 (1987), as an example of nonconstitutional error).

c. *Corporal Hall's Testimony.*

Investigating officer Corporal Hall's testimony about the Safe Haven Child Advocacy Center was in response to the State's question asking him to describe for the jury what Safe Haven is since he had just testified that the Petitioner's children were interviewed there. Ms. Lawson testified that neither the question nor the answer were objectionable. Both children testified at trial to the criminal conduct of their father. There is no reasonable probability that a failure to object to Hall's testimony about Safe Haven affected the outcome of trial.

d. *R. B.'s Testimony.*

Mr. B is the Petitioner's nephew and testified at trial that he was a prior child sexual victim of the Petitioner. There was evidence at trial that Mr. B 's mother (the Petitioner's sister) assumed responsibility for the Petitioner's children when the Petitioner was unable to care for them owing to his substance abuse. The Petitioner offered no evidence at trial, and identifies none in this habeas proceeding, that Mr. B 's mother derived any financial benefit from her beneficent role to her niece and nephew. Specificity in habeas pleading is a requirement. **W. Va. Code** § 53-4A-2; SER Markley v. Coleman, *supra.*

The Petitioner offered evidence at trial through his mother, Marion N , suggesting that the motive behind the allegations against the Petitioner was that the rest of the family were jealous of the Petitioner. The jury apparently found the Petitioner's mother to lack credibility.

Mr. Dehaven cross-examined Mr. B on his mother's role with the Petitioner's children and a family "movement" against the Petitioner; Mr. B knew nothing of what trial counsel was trying to suggest. [Tr. 3/27/08, vol. II, 83-85.] The Petitioner fails

20

to identify how a more searching cross-examination of Mr. B(     on these issues would have either been objectively reasonable or would have led to a reasonable probability that the outcome of the trial would have been different.

e. S(    N    's Testimony.

S(    N(    is the Petitioner's son and his victim. S    's trial testimony was that he was about ten years of age when the Petitioner forced him at knife-point to watch a pornographic video. There was evidence at trial that S    N    is aunt (the Petitioner's sister) assumed responsibility for S    and his sister when the Petitioner was unable to care for them owing to his substance abuse. The Petitioner offered no evidence at trial, and identifies none in this habeas proceeding, that S    N    is aunt derived any financial benefit from taking care of S    and his sister. Specificity in habeas pleading is a requirement. **W. Va. Code** § 53-4A-2; SER Markley v. Coleman, supra.

Mr. Dehaven cross-examined S    N    about his living with his aunt and the credence of his testimony. [Tr. 3/27/08, vol. II, 142-149.] Mr. Dehaven later re-called S    N    to the stand to further interrogate him over his testimony. [Tr. 3/28/08, vol. II, 5-12.] The Petitioner fails to identify how a more searching cross-examination of S    N    on his credibility or the family's perception of the Petitioner would have either been objectively reasonable or would have led to a reasonable probability that the outcome of the trial would have been different.

f. S    N    s Testimony (cont.).

The Petitioner also complains that Mr. Dehaven's cross-examination of S    adduced testimony of the Petitioner's abuse of alcohol and the Petitioner providing an unstable home life for his children. The record, however, shows that these were matters that were already covered with S    on direct examination. [Tr. 3/27/08, vol. II, 120-121, 129-130, 132-133, 134-140.] The Petitioner fails to identify how Mr. Dehaven's cross-examination of S    N    on his credibility as to these issues was not objectively

21

reasonable or would have led to a reasonable probability that the outcome of the trial would have been different.

g. S\[ \_ N\_\_\_ s Testimony (cont.).

The Petitioner also complains that Mr. Dehaven's cross-examination of S\[ did not address alleged inconsistencies between his testimony and an earlier statement given to police or a delay in reporting the Petitioner's conduct. The Petitioner fails to identify what "inconsistencies" are alleged or what delay was involved. Specificity in habeas pleading is a requirement. **W. Va. Code** § 53-4A-2; <u>SER Markley v. Coleman</u>, *supra*. The Petitioner fails to identify how Mr. Dehaven's cross-examination of S\[ N\[ \on his credibility as to these issues was not objectively reasonable or would have led to a reasonable probability that the outcome of the trial would have been different.

h. A\[ N\_ s Testimony.

A\[ \q is the Petitioner's daughter and his victim. A\[ testified that she was about twelve years of age when her father sexually assaulted her and forced her to watch a pornographic video. The Petitioner complains that Ms. Lawson's cross-examination did not address alleged inconsistencies between her testimony and an earlier statement given to police or a delay in reporting the Petitioner's conduct. The Petitioner fails to identify what "inconsistencies" are alleged or what delay was involved. Specificity in habeas pleading is a requirement. **W. Va. Code** § 53-4A-2; <u>SER Markley v. Coleman</u>, *supra*.

There was evidence at trial that A\[ N\[ 's aunt (the Petitioner's sister) assumed responsibility for A\[ and her brother when the Petitioner was unable to care for them owing to his substance abuse. The Petitioner offered no evidence at trial, and identifies none in this habeas proceeding, that A\[ N\[ 's aunt derived any financial benefit from taking care of A\[ \_ and her brother. Specificity in habeas pleading is a requirement. **W. Va. Code** § 53-4A-2.

The Petitioner fails to identify how Ms. Lawson's cross-examination of A\[

22

N███ on her credibility as to these issues was not objectively reasonable or would have led to a reasonable probability that the outcome of the trial would have been different.

i. *The Petitioner's Sister, Debbie B*

Debbie E        s the Petitioner's sister and was the custodian of A¹        and S¹   ı N      · at the time of trial. Ms. B ⎯ is also the mother of R   ₁E       and A G¹   ¹, each of whom testified to the Petitioner's sexual conduct towards them when they were children. What advantage the Petitioner thinks would have been gained by his counsel calling Ms. B      as a witness was not specified by the Petitioner either in his Petition or his testimony. The Petitioner offered no evidence at trial, and offers nothing but hollow allegations in this habeas corpus proceeding, that the conduct for which he was convicted was based on manufactured allegations. "What defense to carry to the jury, what witnesses to call, and what method of presentation to use is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess." State v. Miller, *supra*, 194 W. Va. 3, 17. Ms. Lawson testified that she did not think that putting Ms. B¹ ⎯ on the stand would further the Petitioner's case. The Petitioner fails to identify how trial counsel's decision to not call D *Debbie B*     as a witness was not objectively reasonable or would have led to a reasonable probability that the outcome of the trial would have been different.

j. *Other Witnesses.*

The record shows that the Petitioner called the following six witnesses on his behalf at trial: Deputy Colleen Gibbons, Ashley M¹     Rachel P     ⎯ S¹   N¹   ; Dana W¹     , and Marion N¹    ⎯. He asserts that none of these were "witnesses of substance." The Petitioner fails to identify how the calling of these witnesses was a failing on counsel's part. The Petitioner fails to identify any other witness who would have caused the jury to arrive at a different result at trial. Specificity in habeas pleading is a requirement. **W. Va. Code** § 53-4A-2; SER Markley v. Coleman, *supra*. "What

23

defense to carry to the jury, what witnesses to call, and what method of presentation to use is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess." State v. Miller, *supra*, 194 W. Va. 3, 17.

k. *The Petitioner's Decision to not Testify.*

The Court raised the issue of the Petitioner's decision whether to testify on the last full day of evidence, a Friday, covering the dialogue in full on the afternoon of that day. The Petitioner fully acknowledged that his decision whether to testify was his own and that he would not testify. The defense rested. [Tr. 3/28/08, vol. I, 110-112, 144; Tr. 3/28/08, vol. II, 128-132.] At no time on the following Monday when trial resumed, after a full weekend to contemplate his decision, and before the jury was instructed by the Court, did the Petitioner indicate that he had changed his mind and would like to testify. [Tr. 3/31/08, 1-13.] The Petitioner and his trial counsel testified that the Petitioner made the decision not to testify. Ms. Lawson testified that she did not think that the Petitioner testifying would have been in his best interest. The record plainly shows that the Petitioner was aware that the decision to testify was his alone and that he exercised his right to not testify. The Petitioner fails to identify any manner in which trial counsel acted unreasonably in a way that would have led to a reasonable probability that the outcome of the trial would have been different.

l. *The Petitioner's Closing Argument.*

The Petitioner asserts that trial counsel did not give an appropriate closing, failing to address issues before the court and addressing issues not before the court. The Petitioner fails to specify what he means or provide any such examples. Specificity in habeas pleading is a requirement. **W. Va. Code** § 53-4A-2; SER Markley v. Coleman, *supra*. Closing arguments are not evidence. The jury could only base their decision that the Petitioner was guilty on the evidence that was presented. The Petitioner fails to identify any manner in which trial counsel acted unreasonably in closing arguments in a way that would have led to a reasonable probability that the outcome of the trial would

24

have been different.    *A.N.'s and S.N.'s*

    m. *DVD Recordings of A[...] nd S[...] s Interviews.*

Safe Haven interviews were conducted of A[...] and S[...] regarding their allegations about the Petitioner's criminal conduct toward them. The State did not introduce those interviews as evidence since A[...] and S[...] testified live before the jury. The Petitioner's counsel moved to admit as evidence the recordings of those interviews, apparently at the Petitioner's insistence. The Petitioner fails to identify the content of these Safe Haven interviews that would have led to a reasonable probability that the outcome of the trial would have been different. Specificity in habeas pleading is a requirement. **W. Va. Code** § 53-4A-2; <u>SER Markley v. Coleman</u>, *supra*. The Petitioner fails to identify how counsel was unreasonable in not publishing the DVDs of A[...]'s and S[...]'s statements of how their father, the Petitioner, committed criminal offenses upon them.

    n. *Mental Defense/Diminished Capacity.*

The trial record reflects that the Petitioner drank beer. However, the Petitioner offers nothing more than a bald assertion that his counsel did not properly evaluate this issue or assert it as a defense. Ms. Lawson testified that she found nothing about the Petitioner's drinking or mental health that would rise to the level of a defense. The Petitioner offered no medical evaluation or report as part of this habeas would suggest that his drinking of beer affected his criminal responsibility such that the outcome of his case would have been different had this been an issue. Specificity in habeas pleading is required. **W. Va. Code** § 53-4A-2; <u>SER Markley v. Coleman</u>, *supra*.

The West Virginia Supreme Court of Appeals holds:

> The diminished capacity defense is available in West Virginia to permit a defendant to introduce expert testimony regarding a mental disease or defect that rendered the defendant incapable, at the time the crime was committed, of forming a mental state that is an element of the crime charged. This defense is asserted ordinarily when the offense charged is a crime for which there is a lesser included

25

offense. This is so because the successful use of this defense renders the defendant not guilty of the particular crime charged, but does not preclude a conviction for a lesser included offense.

Syl. Pt. 3, State v. Joseph, 214 W.Va. 525, 590 S.E.2d 718 (2003).

The Petitioner also fails to identify the mental state that is an element of the crimes for which he was convicted that beer rendered him incapable of forming. The Petitioner fails to identify any lesser-included offense for which he believes he should have been convicted under this theory. Specificity in habeas pleading is a requirement. **W. Va. Code** § 53-4A-2; SER Markley v. Coleman, *supra.* Without asserting detailed medical or psychological support that the Petitioner was then suffering a mental illness affecting his criminal responsibility, trial counsel is not proven to be ineffective for not pursuing these issues.

o. *Psychological Evaluation of Victims.*

Every person is presumed competent to testify, unless subject to a legal exception. **W.V.R.E.** 601. *See also* **W. Va. Code** § 61-8B-11(c), relating to competency of victims of sexual offenses to testify. The Petitioner offers no factual or legal basis that his children, the victims of his offenses, should be have been compelled to submit to an independent psychological evaluation to determine their competency to testify. The record demonstrates that trial counsel sought psychological records of the victims, and that a guardian was appointed for the children to review such records, including mental health records that the Petitioner produced himself regarding the victim A
[Motion for Health Records, 2/19/08; Motion for In Camera Hearing, 3/4/08; Pre-trial Hearing Order, 3/13/08; Medical Records, 3/13/08.] Upon review of the records, the trial court determined that there was nothing in the records submitted to suggest any inconsistency in A      's telling of what happened and nothing that would affect her competency as a witness. [Second Pre-trial Hearing Order, 3/17/08.] The record demonstrates that trial counsel vigorously pursued this issue. The Petitioner fails to

26

identify how counsel was unreasonable in not seeking further evaluations of the children.

p. *Change of Venue.*

The Petitioner offers no evidence that his case was covered in the media nor does he point to any place in the record during jury selection that the jury was influenced by or had even seen any media accounts about the Petitioner's case. The record shows that the parties were able to select a jury free from bias without any difficulty. Ms. Lawson testified that she had no evidence upon which to base a venue motion. The Petitioner fails to demonstrate any basis for counsel to have moved for a change of venue. Specificity in habeas pleading is a requirement. **W. Va. Code** § 53-4A-2; <u>SER Markley v. Coleman</u>, *supra.*

q. *Appellate counsel.*

The Petitioner does not dispute that his counsel filed an appeal on his behalf and that the appeal was refused by the Supreme Court. The Petitioner asserts that counsel did not raise relevant issues but only identifies the sufficiency of the evidence. However, the record demonstrates that the Petition for Appeal raised the issue of the trial court's denial of the motions for acquittal which is the same as an attack on the sufficiency of the evidence. Despite the fact that this issue was raised on appeal, the Petitioner does not assert in his habeas what precisely was insufficient about the evidence upon which the jury convicted him, except to have tendered the now discredited affidavit of his daughter A. Specificity in habeas pleading is a requirement. **W. Va. Code** § 53-4A-2; <u>SER Markley v. Coleman</u>, *supra.*

The Petitioner also claims that there were another fourteen issues raised on appeal by his counsel which his counsel acknowledged were put forth upon insistence of the client but which lacked merit by citing <u>Anders v. California</u>. The Petitioner fails to identify in his Petition or by testimony why he believes the outcome of his appeal would have been different had counsel not referenced <u>Anders</u> when raising those

27

issues. Specificity in habeas pleading is a requirement. **W. Va. Code** § 53-4A-2; <u>SER Markley v. Coleman</u>, *supra*.

r. *Grand jury transcripts.*

The Petitioner makes no allegation that there is anything in the transcripts of the grand jury presentation that could have been used to impeach any witness at trial. Specificity in habeas pleading is a requirement. **W. Va. Code** § 53-4A-2; <u>SER Markley v. Coleman</u>, *supra*.

17. As to each of the allegations made against trial and appellate counsel, the Petitioner fails to meet either prong of the two-prong standard necessary to prove ineffective assistance claims. <u>State ex rel. Bailey v. Legursky</u>, *supra*; <u>State v. Miller</u>, *supra*. The record is plain that the Petitioner fails to prove any of these allegations of ineffective assistance of counsel, including unwaived Ground 21 on the <u>Losh</u> list. **W. Va. Code** § 53-4A-3(a), -7(a); <u>Perdue v. Coiner</u>, *supra*.

**C. 404(b) Evidence Allegation.**

18. This issue was raised on the Petitioner's direct appeal, refused by the Supreme Court. The Court notes that the Petitioner did not address this issue in his proposed habeas order except by a conclusory clause that "unduly prejudicial 404(b) evidence was entered at trial." That is insufficient for the Petitioner to have proved these allegations. Moreover, the trial record and habeas evidence show that the Petitioner fails to prove this allegation.

The general rule concerning evidence of other "crimes, wrongs, or acts" is:

> 'Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. W. Va.R.Evid. 404(b).' Syl. Pt. 1, *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

28

Syl. Pt. 1, State v. McIntosh, 207 W Va 561, 534 SE2d 757 (2000).

In reviewing a trial court's ruling on the admissibility of evidence under W.V.R.E. 404(b), West Virginia courts heed the following standard:

> The standard of review for a trial court's admission of evidence pursuant to Rule 404(b) involves a three-step analysis. First, we review for clear error the trial court's factual determination that there is sufficient evidence to show the other acts occurred. Second, we review de novo whether the trial court correctly found the evidence was admissible for a legitimate purpose. Third, we review for an abuse of discretion the trial court's conclusion that the "other acts" evidence is more probative than prejudicial under Rule 403. *See State v. Dillon*, 191 W. Va. 648, 661, 447 S.E.2d 583, 596 (1994); *TXO Production Corp. v. Alliance Resources Corp.*, 187 W. Va. 457, 419 S.E.2d 870 (1992), *aff'd*, 509 U.S. 443, 113 S. Ct. 2711, 125 L. Ed. 2d 366 (1993); *State v. Dolin*, 176 W. Va. 688, 347 S.E.2d 208 (1986).

McIntosh, *supra*, 534 S.E. 2d 757, 765, citing State v. LaRock, 196 W. Va. 294, at 311, 470 S.E.2d 613, at 629-30 (1996).

In addition,

> "As to the balancing under Rule 403 [of the West Virginia Rules of Evidence], the trial court enjoys broad discretion. The Rule 403 balancing test is essentially a matter of trial conduct, and the trial court's discretion will not be overturned absent a showing of clear abuse." Syllabus Point 10, in part, of *State v. Derr*, 192 W.Va. 165, 451 S.E.2d 731 (1994).

Syl. Pt. 2, Hatcher v. McBride, 221 W.Va. 5, 650 S.E.2d 104 (2006.)

An abuse of the trial court's discretion in admitting such evidence occurs only if the trial court acted in an "arbitrary and irrational" manner. State v. McGinnis, 193 W. Va. 147, 159, 455 S.E.2d 516, 528 (1994). In a criminal case, such as the case *sub judice*, this Court reviews the evidence "in the light most favorable to the [State], maximizing its probative value and minimizing its prejudicial effect." *Id. See* McIntosh, *supra*, 534 S.E. 2d 757, 765; and LaRock, *supra*, 470 S.E.2d 613, 631.

The State gave notice to the Petitioner of its intent to use W.V.R.E. 404(b)

29

163

evidence, asserting both the factual and legal bases for the admissibility of the evidence. The Notice complies with the notice requirements of W.V.R.E. 404(b). Hypertechnicality in showing how the proffered evidence is relevant to the issues at trial is not required. *See* State ex rel. Caton v. Sanders, 215 W.Va. 755, 601 S.E.2d 75, 81-82 (2004). That evidence is set forth verbatim above and concerns the Petitioner's prior sexual offenses and sexual misconduct with his own niece and nephew when they were children. [State's Notice of Intent to Use 404(b) Evidence, 11/09/07.]

At the pre-trial McGinnis hearing, the State called as witnesses the Petitioner's niece and nephew to prove the allegations made in the 404(b) notice. [Tr. 3/10/08, 3-88.] Our Supreme Court recently reiterated the findings the trial court is to make upon such 404(b) evidence:

> "Where an offer of evidence is made under Rule 404(b) of the West Virginia Rules of Evidence, the trial court, pursuant to Rule 104(a) of the West Virginia Rules of Evidence, is to determine its admissibility. Before admitting the evidence, the trial court should conduct an *in camera* hearing as stated in *State v. Dolin*, 176 W. Va. 688, 347 S.E.2d 208 (1986). After hearing the evidence and arguments of counsel, the trial court must be satisfied by a preponderance of the evidence that the acts or conduct occurred and that the defendant committed the acts. If the trial court does not find by a preponderance of the evidence that the acts or conduct was committed or that the defendant was the actor, the evidence should be excluded under Rule 404(b). If a sufficient showing has been made, the trial court must then determine the relevancy of the evidence under Rules 401 and 402 of the West Virginia Rules of Evidence and conduct the balancing required under Rule 403 of the West Virginia Rules of Evidence. If the trial court is then satisfied that the Rule 404(b) evidence is admissible, it should instruct the jury on the limited purpose for which such evidence has been admitted. A limiting instruction should be given at the time the evidence is offered, and we recommend that it be repeated in the trial court's general charge to the jury at the conclusion of the evidence." Syllabus point 2, *State v. McGinnis*, 193 W. Va. 147, 455 S.E.2d 516 (1994).

Syl. Pt., State v. Willett, 223 W. Va. 394, 674 S.E.2d 602 (2009).

The Petitioner offered no rebuttal evidence to the State's 404(b) evidence. The

trial court made the requisite findings by a preponderance of the evidence and ruled the evidence admissible for the reasons offered by the State in its notice. [Order Admitting 404(b) Evidence, 3/17/08.] The trial court found by a preponderance of the unrefuted evidence that the acts performed by the Petitioner did occur. The trial court found that the evidence was relevant and probative to the sexual offenses in issue at trial. The trial court found that the evidence was offered for a proper purpose under W.V.R.E. 404(b). The trial court found that the events were reasonably close in time, a single generation between family members. The trial court found that the probative value of the evidence was not substantially outweighed by the risk of unfair prejudice. [Id.]

The issue of remoteness goes more to the weight of the evidence than the admissibility. Syl. Pt. 5, State v. Winebarger, 217 W.Va. 117, 617 S.E.2d 467 (2005). Moreover, the trial court's finding that the events were reasonably close in time, or not remote, is within the trial court's discretion. *Id.*, at Syl. Pt. 6. The trial court herein did not abuse its discretion.

The record is plain that the Petitioner fails to prove error in the admission of the 404(b) evidence. **W. Va. Code** §§ 53-4A-3(a), -7(a); Perdue v. Coiner, *supra.*

**D. Conspiracy Allegation.**

19. This allegation is the same as the sufficiency of the evidence allegation denied above and needs no further discussion here.

**E. Other unsupported claims.**

20. The following allegations are all denied for lack of factual or legal support, and deemed waived for failure of the Petitioner to address them in his proposed habeas order:

a) *PSI was inaccurate.* The record also demonstrates that the accuracy of the PSI was covered at the sentencing hearing. [Tr. 6/18/08, 19].

31

b) *Irregularities in Arrest.*

c) *Prejudicial Statements by the Prosecution.*

d) *Denial of Bail.* The record also shows that the Petitioner was granted bail, but that bail was revoked after hearing for having contact with a minor.

e) *Refusal of Continuance.* The record shows that this matter was addressed at hearing before the trial court and on the direct appeal.

f) *Use of Fraudulent Testimony.* Addressed above in Sufficiency of the Evidence.

g) *Constitutional Errors in Evidentiary Rulings.* Addressed above in the 404(b) section.

h) *Excessive Sentence.* The sentencing court is given broad discretion in imposing sentence, as long as it is within the statutory limits and not based on an impermissible factor. State ex rel. Massey v. Hun, 197 W. Va. 729, 478 S.E.2d 579 (1996). *See also* State v. Lucas, 201 W. Va. 271, 496 S.E.2d 221 (1997). The Petitioner does not dispute that he received the statutory sentences.

The record is plain that the Petitioner is not entitled to any relief on these unsupported and/or waived allegations. **W. Va. Code** § 53-4A-3(a), -7(a); Perdue v. Coiner, *supra.*

**F. Grounds Expressly Waived.**

21. At hearing, the Petitioner expressly waived all possible grounds on his Losh list *except* for the following: 7-Mental Competency at the Time of the Crime; 8-Mental Competency at the Time of Trial; 9-Incapacity to Stand Trial Due to Drug Use; 17-State's Knowing Use of Perjured Testimony; 21-Ineffective Assistance of Counsel; 24-Excessiveness or Denial of Bail; 33-Refusal of Continuance; 34-Refusal to Subpoena Witnesses; 39-Claim of Incompetence at Time of Offense; 45-Sufficiency of the Evidence; 50-Severer Sentence than Expected; 51-Excessive Sentence; 52-Mistaken Advice of

32

Counsel as to Parole or Probation Eligibility. The Petitioner knowingly and intelligently waived each of the expressly waived grounds. **W. Va. Code** § 53-4A-3(a), -7(a); Perdue v. Coiner, *supra*.

22. The Petitioner offered no evidence or argument in support of Grounds 7, 8, 9, 17, 24, 33, 34, 39, 50, 51, or 52, unwaived above. The Petitioner knowingly and intelligently waived each of these grounds for failure to offer evidence or argument. Losh v. McKenzie, 166 W. Va. 762, 277 S.E.2d 606, 612 (1981); *see also*: State ex rel. Farmer v. Trent, 206 W. Va. 231, 523 S.E.2d 547 (1999), at 550, n. 9. **W. Va. Code** § 53-4A-3(a), -7(a); Perdue v. Coiner, *supra*.

Accordingly, it is hereby ORDERED that the Amended Petition for Writ of Habeas Corpus is DENIED.

The Clerk shall enter this Order as of the date noted below and transmit attested copies to counsel of record. The Clerk shall retire this matter from the active docket and place it among cases ended.

ENTERED: _5/2/13_

HONORABLE GRAY SILVER III
CIRCUIT JUDGE

Prepared by:

Christopher C. Quasebarth
Chief Deputy Prosecuting Attorney
State Bar No.: 4676

A TRUE COPY
ATTEST
Virginia M. Sine
Clerk Circuit Court
By: _____
Deputy Clerk

33